**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHNNY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-05851 |
| | ) | |
| v. | ) | |
| | ) | Judge John Robert Blakey |
| CONNOR MARCHETTI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Johnny Taylor sues Aurora Police Officer Connor Marchetti and his employer, the City of Auora, as well as three employees in the Parole Division of the Illinois Department of Corrections ("IDOC"): Matthew Blair, James Herbert, and Michael Morris. Blair, Herbert, and Morris, referred herein as the "State Defendants," now move to dismiss all claims against them, [88]. For the reasons explained below, the Court grants the motion in part.

## I. Factual Background[1]

On July 10, 2023, Aurora Police Officer Connor Marchetti arrested Plaintiff Johnny Taylor, a parolee, for felony failure to register as a sex offender. [71] ¶¶ 9, 13, 27. According to Marchetti's incident report, Taylor failed to register as a sex offender with the Chicago Police Department (CPD), as he was required to do on a 90-day basis; as it turned out, however, Taylor had not failed to register. *Id.* ¶¶ 12,

[1] The Court takes these facts from Plaintiff's amended complaint, [71], and accepts them as true for purposes of resolving the motion to dismiss. *See Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

21. First, Taylor was only required to register with CPD annually. *Id.* ¶ 22. Second, Taylor had registered with CPD on April 14, 2023 (that is, 87 days prior to his arrest). *Id.* ¶ 22; [112-9] at 3. Thus, even if Taylor was a 90-day registrant, he would still have been compliant with his registration obligations.

Because Taylor was arrested on parole, Officer Marchetti reported the arrest to Matthew Blair, an IDOC parole agent, and to James Herbert, an IDOC parole supervisor. [71] ¶ 33. Afterwards, without consulting Taylor's assigned parole agent or IDOC's Automated Management Service (AMS) records, Herbert and Blair charged Taylor with a parole violation. *Id.* ¶¶ 33, 35. In doing so, they relied solely upon Marchetti's incident report. *Id.* ¶¶ 33, 37. This report listed both the date Taylor had last registered (4/14/23) and the date of his arrest (7/10/23), a span of 87 days. *Id.* ¶ 37; [112-9] at 3. The parole violation signed by Herbert and Blair also listed the same dates of last registration and the date of arrest, demonstrating on its face that 90 days had not in fact passed since Taylor's last registration. [88-3] at 2. Yet, because of this parole violation charge, Taylor was sent to the Stateville Northern Reception and Classification Center (NRC) in IDOC custody. [71] ¶ 38. He remained there in "squalid conditions" while awaiting a parole hearing. *Id.* ¶ 40.

At his parole hearing on August 7, 2024, the Prisoner Review Board (PRB) found there was no probable cause for Taylor's initial arrest or for the first parole violation. *Id.* ¶ 42. In particular, the PRB noted that the dates in the incident report alone showed that Taylor had complied with his registration requirements. *Id.* ¶ 42. Thus, the PRB dismissed the charge and ordered Taylor's release. *Id.* ¶ 43.

Rather than releasing Taylor on the scheduled date, however, Michael Morris, another IDOC Parole Division supervisor, charged Taylor with another parole violation: failure to obtain a valid host site for release on parole (commonly called a "gate violation"). *Id.* ¶¶ 45, 46. Morris did not contact Taylor's assigned parole agent, consult AMS records, or otherwise verify Taylor's housing status prior to charging Taylor with the violation. *Id.* ¶¶ 47, 48. In filing the gate violation, Morris affirmed that no suitable host site existed for Taylor, despite attempts to place him with family, friends, or any other places for which IDOC would pay. *Id.* ¶ 52; [112-16] at 1. Morris's affirmation was false, as Morris in fact had not attempted to place Taylor in the community prior to filing the gate violation. [71] ¶ 52.

Taylor alleges that Morris filed the gate violation in retaliation for a separate *pro se* lawsuit Taylor filed against defendants including Morris based upon incidents in 2022. *Id.* ¶ 49. Taylor further claims that a grievance counselor informed him that Morris "hated sexual offenders" and had a reputation for doing anything he could to make sure they remained confined. *Id.* ¶ 50.

The second parole violation charge prevented Taylor from leaving Stateville NRC, even after the PRB ordered his release. *Id.* ¶ 51. Following a second hearing, the PRB again ordered Taylor released after finding that Taylor had a valid host site for release and did not violate his parole. *Id.* ¶ 54. IDOC released Taylor five weeks after his arrest for failing to register. *Id.* ¶ 55; [112-1] ¶ 23. Taylor alleges that, in total, the arrest and parole violation charges kept him on parole an extra 16 months. [71] ¶ 58.

Plaintiff filed this suit on July 10, 2024, [1], then filed an amended complaint [71] on July 29, 2025, alleging several violations of federal constitutional rights by the State Defendants under § 1983, [71] ¶ 1, in addition to state law malicious prosecution and indemnification claims, *id.* ¶¶ 108, 124, 128. In particular, he sues Defendants Blair and Herbert for false arrest (Count IV) and illegal seizure, illegal detention, and malicious prosecution in violation of the United States Constitution (Count V) and Illinois law (Count VI), all premised upon the first unfounded parole violation (for failing to register); and he sues Defendant Morris for false arrest (Count VII) and illegal seizure, illegal detention, and malicious prosecution in violation of the United States Constitution (Count VIII) and Illinois law (Count IX), all premised upon the second unfounded parole violation (the gate violation). The State Defendants now move to dismiss all claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* [88].

## II. Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pled allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* This Court does not, however, accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must "allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or the laws of the United States." *Estate of Sims ex rel Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). To determine liability under § 1983, it is "necessary to isolate the precise constitutional violation" with which the defendant is charged; as a result, the "first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right secured by the Constitution and laws." *Welton v. Anderson*, 770 F.3d 670, 673 (7th Cir. 2014) (internal quotations omitted).

## III. Analysis

Before turning to the individual claims, the Court observes that Plaintiff's operative complaint includes an opening paragraph alleging that "defendants deprived plaintiff of his rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution," [71] ¶ 1, but he does not tie any specific claim to any specific Amendment. The Court, therefore, has had to infer his intent from the language of the allegations, as noted below.

### A. Plaintiff's Fourth Amendment Claims

In Counts IV and VII, and Counts V and VII, Taylor appears to allege that Defendants violated his Fourth Amendment rights when they arrested and seized him without probable cause in connection with the first and second parole violations.

#### 1. First Parole Violation (Herbert & Blair)

As to the first parole violation, Taylor alleges that Herbert and Blair violated his Fourth Amendment rights when they violated him for failing to register as a sex offender, as detailed in Marchetti's arrest report. The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" unless there is a showing of probable cause. U.S. CONST. amend. IV. Because parolees have a much more limited liberty interest than ordinary citizens, however, "seizure of a parolee requires something less than probable cause to be reasonable under the Fourth Amendment." *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003). Instead, searches and seizures of parolees remain constitutional if based upon reasonable suspicion. *Id.* Reasonable suspicion is "something less than probable cause but more than a hunch, which exists when there is some objective manifestation that a person is, or is about to be, engaged in prohibited activity." *Id.* at 659 (citing *United States v. Lenoir*, 318 F.3d 725, 729 (7th Cir. 2003)) (internal quotation marks omitted).

Here, Taylor has pled sufficient facts to state a plausible claim that Defendants Herbert and Blair lacked such reasonable suspicion, and thus violated his Fourth Amendment rights, when they issued the first parole violation. Defendants argue

that the "actual basis" for the violation "was that Plaintiff allegedly violated a criminal statute, as evidenced by his arrest." [88] at 7. While an arrest *can* be "a viable, independent basis for filing a parole violation," *Colbert v. Willingham*, No. 13-cv-2397, 2015 WL 3397035, at *10 (N.D. Ill. May 26, 2015), *aff'd sub nom. Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017), law enforcement officers may not turn a blind eye to the facts in this record. Herbert and Blair could not have an "objective manifestation" that Taylor had violated or was about to violate his parole, as would be required to constitutionally seize him, *see Knox*, 342 F.3d at 657, because Marchetti's incident report demonstrated, on its face, that Taylor last registered with CPD just 87 days prior, and thus, in fact did not commit the crime for which he was arrested.

The parole violation document itself, which shows an arrest date of July 10, 2023, and a registration date of April 14, 2023, further undermines any claimed reasonable suspicion. [88-3] at 2. Based upon the allegations of the complaint, Herbert and Blair signed and filed a parole violation charge based upon Taylor's arrest for an offense they knew he did not commit. The Court thus denies the State Defendants' motion to dismiss Plaintiff's Fourth Amendment claims against Herbert and Blair.

### 2. Second Parole Violation (Morris)

As to the second parole violation, Taylor alleges that Morris violated his Fourth Amendment rights when he violated him for failing to obtain a valid host site. As above, the central question is whether Morris had reasonable suspicion that Taylor

had violated the terms of his parole. And, as above, the Court finds that Taylor has stated a plausible Fourth Amendment claim as to Morris as well.

As an initial matter, "a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox*, 342 F.3d at 658 (citing *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 742–43 (7th Cir. 2003)). Taylor alleges that Morris falsely affirmed that he could find no suitable host sites despite attempts to place Taylor with family, friends, or anywhere that IDOC would pay for; in fact, he alleges that Morris did not even contact his parole agent to verify his housing status or check Taylor's readily available parole file, which showed that Taylor was living on his own, in an approved rental unit at the time of his arrest. [71] ¶¶ 46–47. Given the allegations of deliberately false statements by Morris, and the fact that Morris issued the second violation despite having access to Marchetti's report and Taylor's AMS file (which demonstrated Taylor's approved host site), Taylor has plausibly alleged that Morris lacked reasonable suspicion to issue the second parole violation and thus violated his Fourth Amendment rights. The Court denies the State Defendants' motion to dismiss the Fourth Amendment claim(s) against Morris.

### B. Claims Invoking the Fifth, Eighth, and Fourteenth Amendments

In addition to the Fourth Amendment, Plaintiff invokes the Fifth, Eighth, and Fourteenth Amendments. But, as discussed below, his allegations do not plausibly allege a violation of any of these Amendments.

The Fifth Amendment provides that "no person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Here, the "Fifth Amendment's Due Process Clause is a misfit for a § 1983 action because it has not been incorporated against the States." *Economan v. Luttrull*, No. 24-3165, 2026 WL 82958, at *6 (7th Cir. Jan. 12, 2026); *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (distinguishing between the Due Process Clauses of the Fifth and Fourteenth Amendments) (internal quotation marks omitted). Because Herbert, Blair, and Morris were IDOC employees at all times relevant to this litigation, [71] ¶ 6, they are not subject to Fifth Amendment claims under § 1983, and the Court dismisses any Fifth Amendment claims against the State Defendants.

Taylor's allegation of an Eighth Amendment violation also falls short. The Eighth Amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. Like the Fifth Amendment, however, the Eighth Amendment is inapplicable to Taylor's injury. Taylor does not allege that he was held in custody because he was convicted of felony failure to register as a sex offender, but rather that he was wrongfully held as a pretrial detainee in "squalid conditions . . . for a protracted period." [71] ¶ 40. This defeats an Eighth Amendment claim because "the State does

not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt . . . without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Thus, even if Taylor had plausibly alleged his pretrial detention constituted "cruel and unusual punishment" (and he has not), the proper recourse for a § 1983 action would be through the Fourteenth Amendment's Due Process Clause. *See id.* Therefore, the Court dismisses any Eighth Amendment claims against Herbert, Blair, and Morris.

Although Plaintiff's allegations remain unclear as to any alleged Fourteenth Amendment violation, it appears he is seeking to assert a claim based upon his conditions of confinement. *See* [113] ¶ 22. The Fourteenth Amendment guarantees that state governments may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. When pursuing a conditions-of-confinement claim as a pretrial detainee, a plaintiff may "prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kinglsey v. Hendrickson*, 576 U.S. 389, 398 (2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)) (internal quotation marks omitted). Here, Plaintiff alleges only that he was subject to "squalid conditions" at Stateville NRC, [71] ¶ 40, and this allegation remains insufficient to state a plausible claim that Taylor's rights as a pretrial detainee were violated. Although unfortunate, that Taylor was subject to a dirty living space, by itself, will not clear the threshold of plausibility. *See McCoy v.*

*Atherton*, 818 F. App'x 538, 541–42 (7th Cir. 2020) (affirming 12(b)(6) dismissal of pretrial detainee's Fourteenth Amendment conditions-of-confinement claim where he alleged "he lived in a dirty cell"). The Court grants Defendants' motion to dismiss as to any Fourteenth Amendment claims.[2]

### C. Qualified Immunity

Defendants also argue that they remain entitled to qualified immunity, and that Plaintiff's complaint fails on this basis as well. Having determined that Plaintiff may proceed only on his Fourth Amendment claims, the Court considers only whether Defendants Herbert, Blair, and Morris are entitled to immunity on Plaintiff's Fourth Amendment claims.

The defense of "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To assess whether qualified immunity applies, "courts employ a two-prong test: (1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Jackson v. Anastasio*, 150 F.4th 851, 856 (7th Cir. 2025) (quoting *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013)) (internal quotation marks omitted). Courts may "exercise their sound discretion in deciding

[2] To the extent this ruling creates tension with the Court's order on the Aurora Defendants' motion to dismiss, [130], that tension is a function of the way Plaintiff pled his claims in the Amended Complaint.

which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236.

Because Taylor has plausibly alleged that Defendants violated his Fourth Amendment rights, the only remaining question is whether those rights were clearly established at the time the conduct occurred. Rights are "clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). This requires the plaintiff to "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Chan v. Wodnicki*, 123 F.3d, 1005, 1008 (7th Cir. 1997). At a minimum, "there must be settled authority that would cause [the defendant] to understand the illegality of the action." *Howell*, 853 F.3d at 897.

Here, the Fourth Amendment rights allegedly violated by Herbert and Blair were clearly established at the time of their conduct. Taylor alleges that Herbert and Blair issued the first parole violation based solely on Marchetti's report, which demonstrated on its face that Taylor complied with his registration requirements. On this point, the Supreme Court has held that "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable . . . the shield of immunity will be lost." *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986) (internal citations omitted). Because the report demonstrates that

Herbert and Blair not only lacked reason to suspect Taylor had violated the statute at issue, but that they had reason to know that he had not done so, their signing of the parole violation documents violated clearly established law.

So too the Fourth Amendment rights allegedly violated by Morris. Long-standing precedent in the Seventh Circuit holds that "a warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless regard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Knox*, 342 F.3d at 658. Taylor alleges that Morris knowingly made false statements necessary to support the gate violation; as such, he has plausibly alleged that Morris's conduct violated clearly established law, and the Court declines to dismiss based upon qualified immunity.

**D. Plaintiff's State Law Malicious Prosecution Claims**

In Counts VI and IX, Taylor alleges malicious prosecution claims under state law against the State Defendants. Defendants seek to dismiss these claims, arguing only that, if the Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over these claims. *See* [88] at 11. Because Plaintiff's Fourth Amendment Claims proceed, the Court declines to dismiss on the basis urged.

Defendants also argue that Taylor failed to address these claims in response to their motion to dismiss, signaling that he has abandoned them, *see* [120] at 10. But Defendants' motion did not advance a substantive argument for dismissing the state law claims. Because they merely asserted that the dismissal of the federal claims

counseled the dismissal of the state law claims, Taylor's arguments in support of the federal claims necessarily defended the state law claims. He thus "proffered some legal basis to support his cause of action," *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), and the Court denies Defendants' motion as to the state law claims.

## IV. Conclusion

For the reasons explained above, the Court grants in part and denies in part Defendants' motion to dismiss [88]. Because Plaintiff's amended complaint fails to state viable claims for violation of the Fifth, Eighth, or Fourteenth Amendments, the Court grants the State Defendant's motion to dismiss any such claims. Plaintiff's Fourth Amendment claims may proceed, however, and the Court denies the motion as to these claims, as well as Plaintiff's state law malicious prosecution claims.

Dated: September 15, 2026

Entered:

John Robert Blakey
United States District Judge